## Philip Eames *vs.* Elisha Johnson & others.

Under Rev. Sts. *c.* 25, § 12, if a highway tax is not worked out or paid during the year in which it is assessed, it must be placed in the next assessment of a town tax upon the delinquent, and not afterwards; and if it is placed in a subsequent assessment, and the tax list and warrant show upon their face the year in which it was originally assessed, and the tax is collected by seizure and sale of property, an action therefor lies against the collector, and such assessors as directed the proceedings of the collector.

Tort against certain town officers of Washington for the conversion of a cow. The conversion alleged was by taking and selling the cow on a tax warrant.

At the trial in the superior court, it appeared that in 1857 the assessors of Washington, where all the parties lived, assessed upon the plaintiff in addition to his money taxes a highway tax of $19.40; that this assessment was legally made and duly committed to one Crane, the highway surveyor for the district in which the plaintiff lived, to be collected in labor, according to law and the vote of the town; that Crane gave due notice to the plaintiff in that year to work out his tax, and afterwards, claiming that the plaintiff had not done so, rendered to the assessors, in the spring of 1858, a list of the highway taxes in his district for 1857, on which the name of the plaintiff was borne, and was not marked as paid; that in the year 1858 the plaintiff, one Manley and one Abbott were assessors, and the plaintiff, in April 1858, presented to the board a bill of work which he claimed had been done by him, in compliance with the request of Crane, upon the roads in his district, amounting to $19.40; that the board were then satisfied that the plaintiff had worked out the tax, and one of them crossed it off, on the list, with the assent of the others; and the assessors of 1858 did not do anything further in relation to it.

In 1859, Charles Crozier, one of the defendants, was one of the board of assessors, and the defendant Johnson was the collector. The tax list was delivered to the collector in June or July, and in September, after he had collected a portion of the taxes, the assessors added to the list the said highway tax, as a

money tax to the plaintiff, as follows: " Highway tax for 1857, Philip Eames, $19.16." The warrant was also altered so as to direct the collection of a certain sum for overlayings and deficiencies on the highway taxes " for 1857 and 1858," instead of " for 1858," as it had originally been written. This tax, however, remained uncollected until the summer of 1860, when the board of assessors for that year, consisting of Crozier and two others, who were made defendants in this action, directed Johnson to collect it by seizing and selling property of the plaintiff, and thereupon Johnson proceeded to seize and sell the plaintiff's cow, and applied the avails, so far as necessary, to the payment · of the tax.

There was conflicting evidence as to whether the plaintiff actually worked out the tax in 1857; but *Rockwell,* J. ruled that this question was immaterial, and that the plaintiff was entitled to recover against all the defendants. A verdict was returned accordingly, and the defendants alleged exceptions.

*S. W. Bowerman,* for the defendants.

*T. P. Pingree, Jr. (J. D. Colt* with him,) for the plaintiff.

DEWEY, J. Under the statutes existing at the time of the assessment of the highway tax of 1857, Rev. Sts. *c.* 25, § 12, the proceedings under which the plaintiff's property was taken and sold were not authorized. The authority to assess and collect taxes is wholly derived from the statutes, and the parties acting in relation thereto must strictly conform to them.

The town had voted to raise a certain sum of money to be expended in labor and materials on the highways, the same being what is familiarly known as a labor tax. The Rev. Sts. *c.* 25, § 12, have provided as to the manner of the collection of such a tax in case it has not been duly paid in labor. The surveyor, at the expiration of his term, is to render to the assessors a list of such persons as shall have neglected or refused to work out or otherwise pay their highway tax, when required by him, " and such deficient sums shall be placed by the assessors in a distinct column in the next assessment of a town tax upon such delinquents, and collected like other town taxes."

Such duty was devolved on the assessors for the year 1858,

and was not properly within the jurisdiction of the assessors for 1859. The office of assessor is an annual one, and the duties of the assessment were to be performed by those holding that office during the political year 1858.

It presented no ground for a departure from the provisions of the statute, that the plaintiff was himself one of the assessors during that year. The remaining assessors were a board fully competent to act in the premises. They were satisfied that the tax ought not to be added to the ordinary taxes for the year 1858, inasmuch as they were satisfied it was not unpaid. The assessors of 1859 acted without authority in adding the tax to the tax in 1859, in the manner they did. The assessors for 1860 assumed a further unauthorized agency, in personally directing the collector of taxes to seize and sell the plaintiff's property, and thus collect the tax.

It was urged that the case of *Pond* v. *Negus*, 3 Mass. 230, would authorize holding this provision, requiring the unpaid highway tax to be added to the next assessment, to be construed as merely directory. It was so held in that case, in reference to the provision requiring a school district tax to be assessed in thirty days after the clerk of the district should certify to the assessors the sum voted to be raised. That case arose under other provisions of law, and is certainly obnoxious to the objection of allowing a tax to be assessed after the term in which it was made the duty of the assessors to assess the same, and we are not disposed to extend it. It is to be remarked that the whole system of raising money by school districts is unlike that of town taxes, the latter being annual taxes.

The tax having been illegally assessed in the present case, the further inquiry is as to the personal liability of the defendants for the illegal taking of the property of the plaintiff.

As to the collector of taxes, the court have been disposed to throw around him a very liberal protection ; and when the warrant is good on its face, sufficient in point of form, and the assessors have jurisdiction of the subject, the collector is not liable for its due execution. *Hays* v. *Drake*, 6 Gray, 387. But a warrant bad on its face furnishes no protection to the collector.

Here that part of the warrant as to this tax was on its face illegal and without the jurisdiction of the assessors for 1859. This tax was added to the list long subsequently to the delivery of the tax bill of 1859 to the collector, and when added indicated plainly that it was for an unpaid highway tax for 1857. This warrant under these circumstances furnished no excuse for the levy on the plaintiff's property by the collector.

The next inquiry is as to the other three defendants, one of whom was assessor in 1859 and 1860, and the others were assessors in 1860 merely. It is said that these persons are exempted from liability to this action under the provisions of Rev. Sts. *c.* 7, § 44, making them responsible only for the want of integrity and fidelity on their own part " when such tax shall have been assessed by them in pursuance of any vote for that purpose certified to them by the clerk or other proper officer " of the town. The present case does not fall within that provision. The certificate of the surveyor of highways returned to the assessors of 1858 might have justified those assessors in adding this highway tax to the tax of 1858; but that board, upon investigation of the subject, decided not to add the tax.

This justification fails as a defence for Mr. Crozier. The other defendants are still further disconnected with the period for making the assessment. Their liability is of a different kind, to wit, that, being assessors of 1860, they in August of that year, with Crozier, directed the collector " to go on and collect the tax of the plaintiff by seizing and selling the plaintiff's property." In thus coöperating in the seizure, they all became principals. The result is, therefore, that all the defendants were properly held liable to the plaintiff in the present action.

*Exceptions overruled.*